**Ana Ilsen CARRASQUILLA and Olga Lucia Laprade, as Co–Administratrices of the Estate of Argenix Suarez, deceased; Marco Carrasquilla; and Ana Ilsen Carrasquilla, Plaintiffs**

v.

**MAZDA MOTOR CORP., a/k/a Mazda Motors Corp,; Mazda (North America), Inc.; and Mazda Motor of America, Inc., Defendants**

v.

**Mark Thompson, Third–Party Defendant**

**No. 4:CV–96–2240.**

United States District Court, M.D. Pennsylvania.

Sept. 25, 2001.

Clifford A. Rieders, Esquire, John M. Humphrey, Esquire, Pamela L. Shipman, Esquire, Rieders Travis Humphrey Harris Waters & Waffenschmidt, Williamsport, PA, for plaintiffs.

Joseph E. O'Neil, Esquire, Francis J. Grey, Esquire, Jennifer M. Brooks, Esquire, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for defendants.

*MEMORANDUM* (# 1)

McCLURE, District Judge.

*BACKGROUND:*

Plaintiffs initiated this diversity action pursuant to 18 U.S.C. § 1332 with the filing of a complaint alleging various state-law claims arising from a motor vehicle accident.[1] Succinctly stated, plaintiffs allege that the Mazda Protégé manufactured and/or marketed by defendants was not designed to protect sufficiently the passengers should an accident occur.

Defendant Mazda Motor Corporation filed a third-party complaint against Mark Thompson, the driver of the other vehicle involved in the accident.[2]

By order dated August 29, 1997, the court held that plaintiffs' claim that the subject Protégé was defective because it lacked airbags was preempted by federal law, based on *Pokorny v. Ford Motor Co.*, 902 F.2d 1116 (3d Cir.1990).

Defendants have now moved for summary judgment on the ground that plaintiffs' remaining design defect claims are similarly preempted.

Plaintiffs' have moved for oral arguments regarding defendants' motion.

For the reasons that follow, defendants' motion will be granted in part and denied in part, and plaintiffs' motion for oral argument will be denied.

---

**1.** Plaintiffs' Complaint (record doc. no. 1, filed December 31, 1996) sets forth ten counts, one of which (Count X Damages of Marco Carrasquilla) was stricken by the court by order dated January 13, 1997 as not setting forth a cause of action. The remaining claims are based on the allegation that the car lacked an adequate passenger restraint system and, therefore, was not crashworthy. The remaining claims are as follows: Strict Product Liability (Count I); Negligence (Count II); Misrepresentation (Count III); Breach of Warranty (Count IV); Punitive Damages (Count V); Emotional Distress brought by Ana Ilsen Carrasquilla only (Count VI); Wrongful Death (Count VII); Survival Action (Count VIII); Consortium brought by Marco Carrasquilla only (Count IX). "Punitive damages" also is not a valid cause of action under Pennsylvania law. Rather, it is an element of damages for the torts specified.

**2.** By order dated June 6, 2000, the court granted the motion of Mark Thompson to dismiss remaining third-party claims against him, thereby terminating his status as a third-party defendant.

*DISCUSSION:*

## I. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c)(emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.; White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* 139 F.3d at 393 (quoting, *inter alia, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## II. STATEMENT OF FACTS

The following claims are those applicable to the instant motion, and the facts relating thereto are essentially undisputed.

Plaintiff Ana Ilsen Carrasquilla was the owner of a 1994 Mazda Protégé ("Protégé"). Mazda manufactured the Protégé in March of 1994. At the time of manufacture, Federal Motor Vehicle Safety Standard ("FMVSS") 208, 49 C.F.R. § 571.208,[3] required automobile manufac-

---

**3.** Promulgated by the Department of Transportation pursuant to its authority under the National Traffic and Motor Vehicle Safety Act of 1966, originally 15 U.S.C. § 1381 et seq.

turers to equip all of their 1994 model year vehicles with a passive, *i.e.,* automatic, restraint system. Rather than prescribe a specific passive system, the FMVSS permitted manufacturers to choose between several options including airbags or automatic shoulder belts combined with manual lap belts. The subject Protégé employed an occupant protection system that consisted of passive two-point torso (shoulder) belts, manual lap belts and knee bolsters. A knee bolster is a structural system built into the vehicle's lower instrument and dash panels that absorbs energy during accidents. In a passive restraint system such as the one at issue, the use of a shoulder belt in conjunction with the knee bolster is designed so that, in the event of an accident, the knees would contact the knee bolster soon enough to share the load with the shoulder belt and not overload the person's chest or cause other severe injury.

The Protégé also included a warning label pertaining to the use of the manual lap belts. Specifically, the vehicle had instructions printed on the driver and passenger side sun visors as well as information in the Owner's manual. The instructions on the visor stated: "IMPORTANT before riding, read the label on the other side of the visor." The reverse side of the visor displayed the following:

IMPORTANT FOR YOUR SAFETY

Following these instructions will greatly improve your chances of avoiding severe injury in case of an accident.

Be sure the shoulder belt buckle is engaged.

Always wear your lap belt when the car is moving.

(1988 ed.), now codified as amended at 49 U.S.C. §§ 30101–30169 (1994 & Supp. II

If a lap belt cannot be worn, you should move the seat forward so your knees are as close to the instrument panel as possible.

See section entitled "Seat Belt Restraint System" in your Owner's MANUAL for more information.

The statement in the Owner's manual provided: "Your Mazda has shoulder belts in the front that automatically move into position. The lap belts are operated manually. Always use the lap belt."

On December 31, 1994, the Protégé was hit head-on by a Nissan pick-up truck driven by third-party defendant Mark Thompson traveling in the opposite direction. Plaintiff Ana Carrasquilla was the right rear seat passenger in her Protégé, operated by her father, plaintiff Marco Carrasquilla. Her mother, Argenix Suarez, was the right front seat passenger.

Although they were both wearing their two-point motorized shoulder belts, neither Marco Carrasquilla nor Argenix Suarez was wearing his or her manual lap belt at the time of the accident. Ana Carrasquilla was also unbelted at the time of the collision.

Only the "locking dogs" on the left inboard seat track of Argenix Suarez's seat, and not those on the right outboard seat track, were locked into the mating track before the collision. Consequently, her right outboard seat track ran forward freely upon collision and the left track locking dogs were pulled out of the seat track adjustment holes, allowing both seat tracks to run forward until the right seat track stopped at the forward most position. Additional force was placed upon the right front seat back by the impact from Ana

1998).

Carrasquilla who struck the seat back during the collision.

As a result of the accident, Argenix Suarez was killed and Marco Carrasquilla suffered disabling injuries.

Plaintiffs now assert, among other things, that defendants designed the subject Protégé negligently and that it was defective in design because (1) it lacked an integrated automatic lap belt, (2) improperly designed seat backs and seat track mechanisms and the absence of adequate knee bolsters caused the restraint option chosen by defendants to be defective in the absence of an integrated lap belt, (3) the Protégé was defective because it lacked an adequate seat back, seat track mechanism and knee bolster, (4) the Protégé lacked adequate warnings regarding the hazard associated with not wearing the manual lap belt, and (5) defendants failed to warn plaintiffs adequately of the risk of harm associated with the purported lack of an adequate seat back, seat track mechanism and knee bolster.

### III. DEFENDANTS' MOTION

The crux of defendants' motion for summary judgment is that, to the extent that plaintiffs' remaining design defect claims are premised on a challenge to a design choice available to defendants under FMVSS 208 (*i.e.*, the use of a restraint system consisting of a two point passive shoulder belt and a manual lap belt), such claims are preempted given the holding in *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

Plaintiffs, on the other hand, contest defendants' motion on three grounds: (1) that *Geier* does not operate to preempt plaintiffs' claims because plaintiffs do not challenge the defendants' design choice but, rather, claim that the automatic belt system chosen as the passive restraint op-

tion was defectively implemented; (2) that even if defendants' use of a shoulder-only automatic belt system is an acceptable option under FMVSS 208, plaintiffs' claims are not preempted if other design characteristics of the Protégé (*i.e.*, inadequate seat tracks, seat backs, and knee bolsters) made it necessary to include an integrated lap belt in order to make the system safe; and (3) that even if plaintiffs' design defect claims are preempted, plaintiffs may still pursue a claim that the vehicle was defective by virtue of inadequate warnings regarding the dangers of shoulder-only automatic belts.

The court will address each argument, in turn, below.

### A. Plaintiffs' Claim Regarding the Lack of an Integrated Automatic Lap Belt

In *Geier v. Am. Honda Motor Co.*, the United States Supreme Court considered a claim of defective design brought by an injured motorist and her parents against an automobile manufacturer under District of Columbia tort law. 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Petitioners claimed specifically that defendant "designed its car negligently and defectively because it lacked a driver's side airbag." *Id.* at 865, 120 S.Ct. 1913. There, the subject automobile, a 1987 Honda Accord, was equipped with manual shoulder and lap belts which petitioner had buckled up at the time, but was not equipped with other passive restraint devices, including airbags. *Id.*

The Supreme Court assessed the extent to which state law tort liability premised on the petitioners' claim that Honda had a duty to install an airbag when it manufactured the subject Accord was preempted by the National Traffic and Motor Vehicle Safety Act of 1966 ("the Safety Act"), 15

U.S.C. § 1392(d)(1988 ed.). *Id.* at 867, 120 S.Ct. 1913. Over a dissent in which four Justices joined, the majority of the Court held that the express preemption provision of the Safety Act did not preempt petitioners' claim.[4] *Id.* at 867–71, 120 S.Ct. 1913. In making that determination, the Court noted that the "savings" provision in the Safety Act, stating that "compliance with a federal safety standard does not exempt any person from any liability under common law," *Id.* at 868, 120 S.Ct. 1913 (citing 15 U.S.C. § 1397(k)(1988 ed.)) (internal quotations omitted), "makes clear that the express pre-emption provision does not of its own force pre-empt common-law tort actions." *Id.* at 870, 120 S.Ct. 1913.

After concluding that the Safety Act did not expressly preempt petitioners' claims, the Court addressed implied preemption.[5] The Court announced that the presence of the aforementioned savings provision "foresees—it does not foreclose—the possibility that a federal safety standard will preempt a state common-law tort action with which it conflicts." *Id.* The Court held that the rule of state tort law petitioners sought to impose by their lawsuit conflicted with the objectives of FMVSS 208— identified as providing the automobile manufacturer with a range of choices among different passive restraint devices introduced gradually over time that would "lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance"—and was, therefore, preempted by the Safety Act. *Id.* at 875, 886, 120 S.Ct. 1913. Specifically, the Court found that:

> petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured the 1987 Honda Accord. Such a state law—*i.e.*, a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors. It thereby would have presented an obstacle to the variety and mix of devices that [FMVSS 208] sought.

*Id.* at 881, 120 S.Ct. 1913.

Although the holding in *Geier,* which dealt with a state no-airbag claim, is not directly on point, the Court's preemption analysis is applicable to the instant case.

In this case, as previously noted, plaintiffs submit that *Geier* does not preempt their claim that the shoulder-only automatic system in the subject Protégé was defective because they do not challenge defendants' choice of restraint system but, instead, argue that the passive restraint option was defectively implemented. Plaintiffs contend that "it was the manner in which [defendants] designed the chosen option which made the vehicle defective, *i.e.,* because it lacked an integrated lap belt or otherwise appropriately provided for pelvic restraint." Specifically, plain-

---

4. The express preemption provision of the Act provides:

    Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d)(1988).

5. "Congress—through federal laws and regulations—may effectively preempt state law in three ways: (1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only by federal law); and (3) implied (or conflict) preemption." *Irving v. Mazda Motor Corp.,* 136 F.3d 764, 767 (11th Cir.1998); *Pokorny,* 902 F.2d at 1120.

tiffs contend that defendants "pick[ed] a particular restraint device that does not work properly because it is not designed safely." Plaintiffs submit that there are "other alternative, feasible and safe automatic belt systems that offer crash protection elements missing from [d]efendants' system."[6]

The court agrees with defendants, however, that, "no matter how [ ] plaintiffs characterize their claim, they are attacking one of the specifically permitted passive restraint options [under FMVSS 208] with 'allegations that a shoulder-only automatic system is unsafe.'" Indeed, given the fact that plaintiffs insist that defendants should have utilized one of the purportedly safer "alternatives," the court can only construe plaintiffs' claim as a direct challenge to the passive restraint system available to, and implemented by, defendants under FMVSS 208.[7] As such, plaintiffs' claim is, in theory, no different from petitioners' claim in *Geier*.

Even prior to *Geier*, as noted by defendants, both the Eleventh Circuit and Third Circuit held that the restraint options provided to manufacturers under the Safety Act and FMVSS 208 implicitly preempt common-law claims that are based on a challenge to the manufacturer's choice of restraint. *See James v. Mazda Motor Corp.*, 222 F.3d 1323 (11th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1358, 149 L.Ed.2d 287 (2001)(addressing design defect claim based on Mazda's choice of restraint system including two-point passive shoulder belt paired with manual lap belt); *Irving v. Mazda Motor Corp.*, 136 F.3d 764 (11th Cir.1998)(same); *Pokorny*, 902 F.2d 1116 (finding state no-airbag claim preempted).

In *Irving*, 136 F.3d 764, the Eleventh Circuit was presented with a case strikingly similar to the one at hand. There, Bonita L. Irving was killed while driving a 1990 Mazda MX–6 equipped with an automatic shoulder belt and manual lap belt. *Id.* at 766. On behalf of Ms. Irving, the administrator of her estate contended that the restraint system permitted as an option to Mazda under FMVSS 208—the same system utilized by defendants in this case—was inherently defective. *Id.* The court affirmed the district court's decision to grant Mazda's motion for summary judgment on preemption grounds, stating:

> Because [p]laintiff sued [d]efendants for exercising an option explicitly permitted by Congress, a conflict exists between state and federal law if [p]laintiff goes forward with this state law claim of defective design. *Taylor [v. General Motors Corp.]*, 875 F.2d [816,][ ] 827 [(11th Cir.1989)]('[A] state cannot impose common law damages on individuals for doing what a federal act or regulation authorized them to do.')(quoting *Chicago &*

---

6. In support thereof, plaintiffs refer the court to their Statement of Facts ¶¶ 60–74. There, plaintiffs suggest that alternatives to defendants' passive restraint system include a motorized lap and shoulder belt system, a shoulder-only passive system with an adequate warning, or a system with a door-mounted automatic lap belt. *Id.* at ¶¶ 64, 67, 73.

7. The court notes that it appears plaintiffs have attempted to model their claim to fit the facts of *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257 (5th Cir.1992)(finding no preemption under the Act where plaintiff did not challenge Mercedes's decision to place an airbag in its cars but, instead, argued that the airbag which did not deploy during automobile accident was defectively designed and should have been safer than required by federal law). Unlike the plaintiff in *Perry*, however, plaintiffs here have not claimed that the restraint option implemented by Mazda in the 1994 Protégé failed to function properly or as it should have. Instead, as previously noted, the court views plaintiffs' claim that the restraint system was designed defectively because it lacked an integrated automatic lap belt as a direct challenge to one of the restraint options available to defendants under FMVSS 208.

*N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318–20, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981)) [ (internal quotation and parallel citation omitted) ]. Therefore, [p]laintiff's suit against [d]efendants for their exercise of an option provided to [d]efendants by FMVSS 208 conflicts with federal law and, thus, is preempted.

*Irving*, 136 F.3d at 769.

Here, too, the court's reasoning is the same. FMVSS 208 provided defendants with several restraint system options to choose from at the time the Protégé was manufactured. These options included the use of airbags or automatic shoulder belts paired with manual lap belts. Defendants chose to employ the second option and installed in the Protégé two-point passive shoulder belts, manual lap belts and knee bolsters. Hence, plaintiffs' claim—which, as previously noted, the court construes as a direct attack against defendants for its exercise of an option under FMVSS 208— "present[s] an obstacle" to the accomplishment and execution of the purposes and objectives of the Safety Act and FMVSS 208, namely the objective of providing manufacturers with flexibility in choosing a restraint system. *Geier*, 529 U.S. at 881, 882, 120 S.Ct. 1913; *see also Irving*, 136 F.3d at 769.

Therefore, plaintiffs' action is preempted to the extent that it asserts liability for defendants' failure to provide an integrated automatic manual lap belt or other pelvic restraint system in the 1994 Protégé, as the claim actually conflicts with FMVSS 208. Accordingly, defendants are entitled to summary judgment with respect to this claim.

### B. Plaintiffs' Claim that Special Design Characteristics Made an Integrated Lap Belt Necessary

■ Plaintiffs next contend that "the restraint system in the 1994 Protégé was defective because of a failure to provide an effective knee-bolster and/or a failure to design the seat back and seat track mechanism to take into account unrestrained rear passengers." Plaintiffs argue specifically that such design characteristics, *i.e.*, inadequate seat back/seat track mechanism and knee bolster, made it necessary for defendants to include in the Protégé an integrated lap belt in order to make the system safe and, therefore, their claims fall outside the scope of FMVSS 208.

In support of their argument, plaintiffs rely on the following passage from *Geier*:

It is possible that some special design-related circumstance concerning a particular kind of car might require airbags, rather than automatic belts, and that a suit seeking to impose that requirement could escape pre-emption—say, because it would affect so few cars that its rule of law would not create a legal "obstacle" to 208's mixed-fleet, gradual objective.

529 U.S. at 885, 120 S.Ct. 1913. Specifically, "if there are 'special design related circumstance[s] concerning a particular kind of [car],' then a manufacturer's own design decisions may foreclose one or more of the choices left open by the federal standards." *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 382 (7th Cir.2000)(quoting *Geier*, 529 U.S. at 885, 120 S.Ct. 1913), *cert. denied*, —— U.S. ——, 121 S.Ct. 1087, 148 L.Ed.2d 962 (2001). "For example, if a plaintiff showed that the design particulars of her car made airbags [or, in this case, an integrated automatic lap belt,] the only viable option, then FMVSS 208 would not foreclose the case." *Hurley*, 222 F.3d at 382.

The court does not believe that plaintiffs' assertion is what the Court in *Geier*

had in mind when discussing claims that could escape preemption by FMVSS 208. Plaintiffs have not established that the lack of adequate seat track mechanisms, seat backs, or knee bolsters constitute "special design related circumstance[s]" that would have required defendants to equip the Protégé with a different restraint option under FMVSS 208. *Id.* at 885, 120 S.Ct. 1913. The court agrees with defendants that, "[t]hough identifying design characteristics of the Protégé which they claim require the installation of a different restraint system, the plaintiffs offer no evidence that the Protégé's design characteristics are any different from those of any other car equipped with a passive shoulder belt and manual lap belt option." *See also Hurley*, 222 F.3d at 382–83 (finding plaintiff's products liability claim against bus manufacturer preempted by FMVSS 208; claim did not qualify for loophole provision regarding "special design related circumstance[s]" where plaintiff pointed to nothing about the design particulars of bus that made it any different from the average bus).

Furthermore, supposing that such design related circumstances did require defendants to include an integrated automatic lap belt or other pelvic restraint, the requirement would not have affected "few cars" since it would have mandated that defendants install such a restraint in all of its 1994 Protégés.

Notably, the court views this precise claim by plaintiffs as nothing more than a backdoor attempt to attack once again defendants' exercise of one of the restraint system options under FMVSS 208—specifically, its choice in implementing the passive two-point shoulder belt paired with the manual lap belt. To the extent plaintiffs' claim is attacking one of defendants' permitted options under FMVSS 208, it frustrates the purpose and objective of the federal regulation and invokes implied preemption under the holding in *Geier*. Therefore, defendants will be granted summary judgment with respect to plaintiffs' claim that the restraint system was defective because of the purportedly inadequate seat back, seat track mechanism and/or knee bolster.

■ However, plaintiffs are correct to argue, as they do in their brief, that they may still pursue design defect claims that do not challenge a restraint systems option provided to defendants under FMVSS 208. Here, plaintiffs claim—and have submitted evidence in support thereof—that the seat back and seat track mechanism, as well as the knee bolster in the Protégé were defective in design. Plaintiffs pursue these claims under the theories of both strict liability and negligence.

Specifically, plaintiffs claim that the seat back and seat track mechanism in the Protégé were defectively designed in that, at the time of the accident on December 31, 1994, only the right, and not the left, outboard seat track locked into the mating track. This allegedly caused the right track to move forward freely during the collision, pulling the left track locking dogs out of the seat track, and allowing both seat tracks to run freely forward until the right seat track stopped at the forward most position. This purported seat track failure compounded the force placed upon Argenix Suarez's torso. Additionally, plaintiffs' expert opined that "the design of the seat itself was defective in that it did not act as an effective barrier to withstand the loading caused by the impact from the rear occupant, [Ana Carrasquilla]."

With respect to plaintiffs' design defect claim regarding the knee bolster in the Protégé, plaintiffs allege that "the so-called 'knee bolster' consisted of merely a plastic panel around the steering wheel column for the driver and the glove box

door for the passenger, without sufficient padding or energy absorption material, and was totally ineffective in that regard."

Given the Third Circuit's opinion in *Pokorny,* the court finds that these design defect claims are not preempted. There, the court considered a design defect action against Ford Motor Company in which plaintiff claimed Ford was liable for its failure to equip the van at issue with airbags, automatic seat belts and protective netting on the windows. 902 F.2d at 1117. The district court granted summary judgment in favor of Ford, finding that plaintiff's state common law tort action was preempted by the Safety Act and FMVSS 208. *Id.* at 1118. At the time the 1981 Ford van was manufactured, FMVSS 208 provided manufacturers with three restraint systems options: airbags, automatic seat belts, or manual set belts. *Id.* at 1119 n. 3. The Third Circuit held that plaintiff's claim challenging Ford's exercise of an option under FMVSS 208 to employ manual seat belts in the van actually conflicted with the Safety Act and FMVSS 208. *Id.* at 1123. The court, however, finding no preemption as to plaintiff's design defect claim pertaining to the lack of protective window netting, reversed the district court's holding on that issue and remanded the case on the question of whether that aspect of plaintiff's design defect claim was actionable under Pennsylvania law. *Id.* at 1126.

In so doing, the *Pokorny* court noted that while the Safety Act's savings clause, 15 U.S.C. § 1397(k), "does not 'save' common law actions that would subvert a federal statutory or regulatory scheme," *id.* at 1125, the provision "permit[s] . . . those common law actions for design defect that do not frustrate or undermine the Safety Act's regulatory framework." *Id.* at n. 10. There, plaintiff's lack of protective window netting claim did not frustrate the Safety

Act or FMVSS 208 as it did not prohibit Ford's exercise of a restraint option granted thereunder. *Id.* at 1126.

In this case, as in *Pokorny,* plaintiffs' aforementioned design defect claims pertaining to the seat back, seat track mechanism and knee bolster in the Protégé are not preempted by FMVSS 208 because the claims do not act to limit defendants' exercise of an option under the regulation, and in no way frustrate the purpose or objective of the Safety Act. To the contrary, such "[c]ommon law liability simply would 'encourage' automobile manufacturers to provide safety features in addition to those listed in Standard 208." *Id.*

To the extent that plaintiffs' defective design action is based on the absence of an adequate seat back, seat track mechanism, and/or knee bolster, it is not preempted because no actual conflict with the federal regulatory scheme exists. Therefore, defendants' motion will be denied since a genuine issue of material fact exists as to whether the vehicle was defectively designed with respect to the seat back, seat track mechanism, and knee bolster.

### C. Plaintiffs' Inadequate Warnings Claims

■ Plaintiffs further claim that the Protégé was defective by virtue of inadequate warnings regarding the dangers of shoulder-only automatic belts. In their complaint, plaintiffs also submit that defendants failed to warn adequately plaintiffs of the risk of harm associated with the lack of a safe dashboard (referring to the knee bolster), seat back and track system (Count II), and that defendants also failed or refused to equip the Protégé with adequate warnings, stickers, or labels (Count III).

Defendants contend that plaintiffs' inadequate warnings claim is preempted because it is "dependent upon a challenge to an FMVSS 208–compliant option." In

support of their argument, defendants cite to *Irving*, 136 F.3d 764 and *James*, 222 F.3d 1323. There, in both cases, the Eleventh Circuit affirmed the district courts' holdings that plaintiffs' claims against Mazda for its alleged failure to warn consumers that the vehicles at issue were dangerous unless a manual lap belt was worn were impliedly preempted by FMVSS 208, as were the plaintiffs' challenge to the automatic shoulder belt options employed by Mazda. *Irving*, 136 F.3d at 769–70; *James*, 222 F.3d at 1325–27. The *Irving* court based its decision on the fact that the plaintiffs had tied together the warnings claim and defective design claims pertaining to the restraint option chosen by Mazda. 136 F.3d at 770.

Here, the court does not believe that all of plaintiffs' warnings claims are inextricably linked to its preempted claim that the Protégé was defective in that it lacked an integrated automatic lap belt. Given the court's analysis of *Geier* above, however, plaintiffs' warnings claims are preempted to the extent that they challenge defendants' restraint options choice under FMVSS 208. Specifically, plaintiffs' claim that inadequate warnings regarding the shoulder-only automatic belt employed by defendants pursuant to federal regulations constitute a design defect is preempted, and defendants' motion will be granted with respect to this claim. *See Irving*, 136 F.3d at 770 ("Because [p]laintiff's defective-design claim is preempted by FMVSS 208, there was no defect about which to warn. Plaintiff's failure-to-warn claim—which is, in this case, dependent on the preempted defective-design claim—was properly dismissed.").[8]

On the other hand, plaintiffs' failure-to-warn claims pertaining to the allegedly defective seat back, seat track mechanism and knee bolster are not preempted given *Pokorny* and the court's discussion in the preceding section. Nothing about these claims frustrates the purpose or objective of FMVSS 208 and, therefore, the claims are not preempted. *See id.* at 1126. Because a genuine issue of material fact remains for a jury to decide whether defendants negligently failed to warn about the purported risk of harm presented by the alleged lack of an adequate seat back, seat track mechanism and/or knee bolster, and whether the Protégé was defective because of the absence of such warnings, defendants' motion will be denied with respect to these warnings claims.

## IV. CONCLUSION

Based on the foregoing, the court will grant in part and deny in part defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c).

Defendants' motion will be granted with respect to the following preempted claims: (1) defendants negligently designed the 1994 Protégé by providing a shoulder-only automatic belt system without an integrated lap belt and the Protégé was defective in design for the same reason; (2) an improperly designed seat back and seat track mechanism, and the absence of an adequate knee bolster caused the restraint option chosen by defendants to be defective in the absence of an integrated automatic lap belt; and (3) the Protégé lacked adequate warnings regarding the hazard

---

8. Plaintiffs also allege that defendants failed to "adequately warn of the risk of harm from the lack of driver's side and passenger side airbags." Plaintiffs' Complaint at ¶ 31. As noted previously, on August 29, 1997, plaintiffs' no-airbag claim was found by the court to be preempted given the holding in *Pokorny*.

Accordingly, plaintiffs' warnings claim regarding the risk of harm from the lack of airbags is preempted on the same grounds as the claim premised on the inadequate warning regarding the shoulder-only automatic seat belt system.

associated with not wearing the manual lap belt.

Defendants' motion will be denied with respect to the following claims not preempted: (1) the Protégé was negligently designed and defective in design in that it lacked an adequate seat back, seat track mechanism and knee bolster; and (2) defendants failed to warn adequately of the risk of harm associated with the lack of an adequate seat back, seat track mechanism and knee bolster.

Plaintiffs' motion for oral argument with respect to defendants' motion for summary judgment will be denied.[9]

9. As demonstrated above, the court was able to decipher *Geier* and consider its implication on the instant case. Therefore, it does not believe that oral argument would have "assist[ed] the [c]ourt with its consideration of the various issues," as claimed by plaintiffs in their motion.