### Phillips v. Ford Motor Co.

C.P. of Northampton County, No. C-48-CV-2012-10279

*John J. Fonash, III*, for plaintiff.

*Emily J. Rogers*, for defendant Ford Motor Co.

BELTRAMI, *J.*, Jan. 21, 2015—This matter is before the court on defendant Ford Motor Company's motion for summary judgment Based on federal preemption ("preemption motion") and motion for summary judgment based on lack of competent expert evidence ("expert motion"). Briefs have been submitted, oral argument was heard, and the matters are ready for disposition.

Plaintiff commenced this action by filing a complaint in Philadelphia County on February 18, 2011, alleging that, on June 16, 2006, she was involved in a single-vehicle accident that resulted in serious bodily injuries. On April 21, 2011, plaintiff filed an amended complaint, to which Ford filed preliminary objections on May 11, 2011. Plaintiff filed an answer to Ford's preliminary objections on May 31, 2011. On June 13, 2011, the honorable William J. Manfredi overruled Ford's preliminary objections and ordered it to file an answer to plaintiff's amended complaint, which Ford did on July 5, 2011. On August 23, 2012, the honorable Annette T. Rizzo entered an order transferring the case from Philadelphia County to Northampton County.

Plaintiff's complaint includes counts for negligence, strict products liability, and breach of warranty against Ford. After a period of discovery, Ford filed the instant motions on April 30, 2014. In its preemption motion, Ford argues that summary judgment should be entered in its favor because the doctrine of federal preemption bars

plaintiff from recovering damages against it in this state tort action. In its expert motion, Ford argues that summary judgment should be entered in its favor because plaintiff has not produced the required expert evidence necessary to make out a prima facie claim of crashworthiness and has failed to indicate she will produce any such evidence. Plaintiff filed responses to both motions on June 2, 2014.

Pennsylvania Rule of Civil Procedure 1035.2 establishes the standard of review for a motion for summary judgment as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2. Summary judgment may only be granted when the record clearly shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Summers v. Certainteed*

*Corp.*, 997 A.2d 1152, 1159 (Pa. 2010). The moving party bears the burden of proving that no genuine issue of material fact exists. *Barnish v. KWI Bldg. Co.*, 916 A.2d 642, 645 (Pa. Super. 2007). In deciding a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1200 (Pa. 2009). Even where the facts are agreed upon, summary judgment cannot be entered if the facts can support conflicting inferences. *Washington v. Baxter*, 719 A.2d 733, 740 n.10 (Pa. 1998).

The party opposing a motion for summary judgment

may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. No. 1035.3(a)(1)-(2). In other words, the "[f]ailure of a non-moving party to adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return

a verdict in its favor establishes the entitlement of the moving party to judgment as a matter of law." *Young v. Commonwealth, Dep't of Transp.*, 744 A.2d 1276, 1277 (Pa. 2000). In deciding a motion for summary judgment, the "record" available for the court's examination includes the pleadings, discovery materials, affidavits, and expert reports. Pa.R.C.P. No. 1035.1.

Viewed in the light most favorable to plaintiff, as the non-moving party, the record in this case establishes the following facts. On June 16, 2006, plaintiff was the front seat passenger in a 1992 Ford Probe driven by defendant Justin Carver. (Preemption Mot. ¶ 1; Answer to Preemption Mot. ¶ 1.) Defendant Carver was operating the vehicle on a curved portion of Black River Road, in Northampton County, when he lost control of the vehicle and the vehicle left the roadway. (Preemption Mot. ¶ 1; Answer to Preemption Mot. ¶ 1.) The vehicle continued moving forward until it contacted the bank of a creek. (Preemption Mot. ¶ 1; Answer to Preemption Mot. ¶ 1.) At the time the vehicle left the roadway, it was traveling in excess of the posted speed limit of thirty miles per hour. (Preemption Mot. Ex. B ("Derian Report") at 1, Ex. D ("Viano Report") at 2.) When the vehicle impacted the embankment, plaintiff was thrown forward into her shoulder belt, causing serious internal injuries. (Derian Report at 3; Viano Report at 20.)

The front passenger seat of the Probe contained an automatic shoulder belt and a manual lap belt. (Preemption Mot. ¶ 3; Answer to Preemption Mot. ¶ 3.) At the time of the accident, plaintiff was restrained by the shoulder belt

but not by the lap belt. (Preemption Mot. ¶ 3; Answer to Preemption Mot. ¶ 3.) The probe also contained a front passenger seatback release lever located behind the front passenger seat. (Derian Report at 3.) This release, when activated, disables the latch holding the front passenger seat in an upright position and allows the seat to fold forward. (*Id.*) The release lever in the probe extended into the footwell area of the rear passenger seat. (*Id.*)

At the time of the crash, an unrestrained female passenger, Amanda Maar, was seated directly behind plaintiff. (*Id.* at 2.) When the probe struck the embankment, Maar was thrown forward into the front passenger seatback. (*Id.* at 3.) Upon exiting the vehicle after the crash, defendant Carver had to push the front passenger seat upright in order to remove plaintiff from the vehicle, as her seat had folded over. (*Id.*) The latch which held the front passenger seat in an upright position was fully functional. (*Id.*) Because the front passenger seat folded over while the latch was fully functional, plaintiff's expert opines that Maar activated the release lever prior to contacting the back of plaintiff's seat. (*Id.*) This caused extra force to bear down on plaintiff, resulting in enhanced physical injuries. (*Id.*)

Plaintiff claims two distinct defects with the probe. The first is that the front passenger seat restraint system should not have required that the lap belt be manually buckled in order to safely restrain a passenger. The second is that the seatback release lever should not have been located in a position where it could have been inadvertently actuated by a rear passenger during a crash. Both alleged defects are pleaded as alternative theories of recovery within

plaintiff's counts for negligence (Count III), strict liability (Count IV), and breach of warranty (Count V) against Ford. Ford contends that each of these theories is federally preempted due to the probe's compliance with applicable Federal Motor Vehicle Safety Standards.

> The principle of federal preemption of state law derives from the second clause of Article VI of the United States Constitution's Supremacy Clause, which provides that the laws of the United States "shall be the supreme Law of the Land; ...any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, laws that are in conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

*Kiak v. Crown Equip. Corp.*, 989 A.2d 385, 390 (Pa. Super. 2010).

> There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress."

*Office of Disciplinary Counsel v. Marcone*, 855 A.2d 654, 664 (Pa. 2004) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (citations omitted).

Federal Motor Vehicle Safety Standards are promulgated pursuant to the National Traffic and Motor Vehicle Safety Act, for the purpose of "reduc[ing] traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. These standards can preempt state tort claims which seek to impose a state standard that conflicts with a federal standard. *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 867-74 (2000). In *Geier*, the court held that a state claim in which the plaintiffs contended that Honda had a duty to install a driver's side airbag was preempted by the applicable federal safety standard that specifically allowed manufacturers to choose not to install such airbags in a percentage of their new vehicles. *Id.* at 874-86. In reaching its decision, the court concluded that a state tort law imposing a duty to install such airbags would have been an impediment to the assortment and choice of restraints that the federal standard sought and to the phase-in of airbags that the federal regulation purposely imposed. *Id.* However, in *Williamson v. Mazda Motor of Am., Inc.*, 131 S.Ct. 1131, 1137-40 (2011), the court held that a state tort claim that would preclude a manufacturer from choosing one of two seatbelt designs specifically permitted for the rear seat of a van by the applicable federal safety regulation was not preempted because, unlike in *Geier*, "the regulation's history, the agency's contemporaneous explanation, and its consistently held interpretive views

[did not indicate] that the regulation sought to maintain manufacturer choice in order to further significant regulatory objectives." *Id.* at 1139. In any event, it is clear that in deciding whether a state tort suit is preempted by a federal safety standard, courts should adhere to "the operation of 'ordinary pre-emption principles, grounded in longstanding precedent.'" *Id.* at 1136 (quoting *Geier*, 529 U.S. at 874). In *Cellucci v. Gen. Motors Corp.*, 706 A.2d 806, 810 (Pa. 1998), the Pennsylvania Supreme Court recognized that, in determining whether a state tort suit is preempted, "the seminal question is whether the state common law tort claims raised...conflict with the methods formulated under the Safety Act to achieve the goal of reducing deaths and injuries to people arising from traffic accidents."

In its preemption motion, Ford first argues that plaintiff's claim that the probe is defective based on Ford's choice to equip the front passenger seat with an automatic shoulder belt and manual lap belt is preempted by the 1984 version of Federal Motor Vehicle Safety Standard ("FMVSS") 208, the same standard that preempted the plaintiff's claim that Honda had a duty to install an airbag in *Geier*. The 1984 version of FMVSS 208 required car manufacturers to equip vehicles with a passive restraint system, with a gradual phase-in period that gave manufacturers a choice among different types of such restraints, including the automatic seatbelt at issue in this case. *See* 49 F.R. 28962-01.

In *Carrasquilla v. Mazda Motor Corp.*, 166 F.Supp.2d 169, 176 (M.D. Pa. 2001), the court found that the

1984 version of FMVSS 208 preempted the same claim plaintiff makes here, that a shoulder-only automatic front passenger seatbelt system is defective. In *Carrasquilla*, as in the instant case, the car at issue contained an automatic shoulder belt and a manual lap belt. *Id.* at 172-73. In finding the plaintiffs' claim to be preempted, the court stated:

> "[N]o matter how [ ] plaintiffs characterize their claim, they are attacking one of the specifically permitted passive restraint options [under FMVSS 208] with 'allegations that a shoulder-only automatic system is unsafe.'" Indeed, given the fact that plaintiffs insist that defendants should have utilized one of the purportedly safer "alternatives," the court can only construe plaintiffs' claim as a direct challenge to the passive restraint system available to, and implemented by, defendants under FMVSS 208.7. As such, plaintiffs' claim is, in theory, no different from petitioners' claim in *Geier*.

*Id.* at 176 (footnote omitted) (quoting the defendant's brief).

As in *Carrasquilla*, plaintiff argues here that the automatic shoulder belt and manual lap belt in the probe is unsafe. Thus, as in *Carrasquilla*, plaintiff's claim directly conflicts with FMVSS 208. In response to Ford's argument, plaintiff simply argues that "this court is not bound by the decision of a federal district court." (Pl.'s Br. at 6.) While this is certainly true, this court cannot argue with the reasoning of the *Carrasquilla* court and

agrees with it. Thus, for the reasons outlined by the court in *Carrasquilla*, the court finds that plaintiff's claims are preempted to the extent that she asserts liability for Ford's failure to provide an integrated automatic or manual shoulder and lap belt system in the probe. In other words, the court will grant partial summary judgment with regard to plaintiff's claims that Ford is liable because of its choice to equip the front passenger seat of the probe with an automatic shoulder belt and manual lap belt.

Ford next argues in its preemption ,otion that the 1989 version of FMVSS 207 preempts plaintiff's tort claims based upon the theory that the seatback release lever should have been positioned elsewhere in the probe. The 1989 version of FMVSS 207 provides:

> S4.3.1. Accessibility of release control. If there is a designated seating position immediately behind a seat equipped with a restraining device, the control for releasing the device shall be readily accessible to the occupant of the seat equipped with the device and, if access to the control is required in order to exit from the vehicle, to the occupant of the designated seating position immediately behind the seat.

49 C.F.R. § 571.207. Ford argues that by making the release control readily accessible, it complied with FMVSS 207, preempting plaintiff's seatback release lever claim. Plaintiff argues that even if Ford complied with FMVSS 207, her claim is not preempted because Ford could have chosen a different location for the lever which would have both complied with the regulation and decreased

the likelihood that it would be inadvertently actuated. The court agrees with plaintiff and finds that plaintiff's claim that the seatback release lever should have been located elsewhere does not conflict with FMVSS 207 and, therefore, is not preempted.

In its expert motion, Ford first argues that plaintiff's expert, Gary Derian, lacks the requisite qualifications to offer expert opinions in the areas of vehicle defects and biomechanical and injury causation. This challenge is more properly brought in a motion in limine. *See* Pa.R.E. 103 cmt. ("Motions *in limine* permit the trial court to make rulings on evidence prior to trial or at trial but before the evidence is offered."). The issue of Mr. Derian's qualifications is evidentiary in nature because it must be decided before proceeding to the question of whether his opinions are admissible. *See* Pa.R.E. 702. Further, the issue can only be decided after hearing Mr. Derian's testimony regarding his qualifications. Thus, the court will defer ruling on whether Mr. Derian is qualified to render opinions in the areas of vehicle defects and biomechanical and injury causation until the time of trial.

Ford next argues that Mr. Derian's opinions are inadmissible because they "are devoid of any basis in science or fact." (Ford's Br. at 10.) More specifically, Ford argues that Mr. Derian's "opinions do not meet Pennsylvania's requirements for admissible expert testimony...under Pennsylvania Rules of Evidence 702, 703, and 705." (Ford's Expert Mot. ¶ 24.) For the reasons set forth above, the court will also defer ruling on the admissibility of Mr. Derian's opinions until

trial.[1] However, it appears that this argument goes to the weight to be given to Mr. Derian's opinions, not to their admissibility.

Finally, Ford argues in its expert motion that summary judgment should be granted in its favor with regard to plaintiff's products liability count because plaintiff has not produced the evidence necessary to establish the three elements of proof required in a crashworthiness claim.

> To this end, we will briefly review the history of products liability law and the crashworthiness doctrine in this Commonwealth.... To state a section 402A products liability claim in Pennsylvania, the plaintiff must prove that the defendant sold a product "in a defective condition," that the defect existed when the product left the defendant's hands, and that the defect caused the plaintiff's injuries. *See, e.g., Hadar v. AVCO Corp.*, 886 A.2d 225, 228 (Pa. Super. 2005). A product is "in a defective condition" when it lacks "any element necessary to make it safe for its intended use or possessing any element that renders it unsafe for the intended use." *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978). Because the key inquiry in all products liability cases is whether or not there is a defect, it is the product, and

---

1. In that section of its brief regarding this issue, Ford argues that Mr. Derian's opinions "violate the *Frye* standard." (Ford's Br. at 10-16.) However, Ford has not filed a motion to exclude the testimony, pursuant to Pennsylvania Rule of Civil Procedure 207.1, and no *Frye* hearing has been held. In any event, even if such a motion had been filed, Rule 207.1 allows the court to defer ruling on the issue until the time of trial. Pa. R.C.P. No. 207.1(a)(3).

not the defendant's conduct, that is on trial. *See, e.g., Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983 (Pa. Super. 2005), *affirmed*, 592 Pa. 38, 922 A.2d 890 (2007).

The crashworthiness doctrine is a subset of strict products liability law that most typically arises in the context of vehicular accidents. *See, e.g., Colville v. Crown Equip. Corp.*, 809 A.2d 916, 922 (Pa. Super. 2002), *appeal denied*, 574 Pa. 742, 829 A.2d 310 (2003). First explicitly recognized as a specific subset of product liability law by this court in *Kupetz v. Deere & Co., Inc.*, 435 Pa. Super. 16, 644 A.2d 1213 (1994), the term "crashworthiness" means "the protection that a motor vehicle affords its passenger against personal injury or death as a result of a motor vehicle accident." *Id.* at 1218. The doctrine extends the liability of manufacturers and sellers to "situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the design defect." *Id.* To avoid liability, a manufacturer must design and manufacture the product so that it is "reasonably crashworthy," or, stated another way, the manufacturer must include accidents as intended uses of its product and design accordingly. *Id.*

*A crashworthiness claim requires proof of three elements. First, the plaintiff must prove that the design of the vehicle was defective, and that at the time of design an alternative, safer, and practicable design*

*existed that could have been incorporated instead. Id. Second, the plaintiff must identify those injuries he or she would have received if the alternative design had instead been used. Id. Third, the plaintiff must demonstrate what injuries were attributable to the defective design. Id.*

*Gaudio v. Ford Motor Co.*, 976 A.2d 524, 531-32 (Pa. Super. 2009) (emphasis added).

Because plaintiff has the burden of proving her crashworthiness claim, to survive Ford's expert motion, plaintiff "may not rest upon the mere allegations or denials of the pleadings" and must be able to point to "evidence in the record establishing the facts essential to the cause of action...which the motion cites as not having been produced." Pa.R.C.P. No. 1035.3(a)(2). A review of the evidentiary record reveals a lack of evidence in support of plaintiff's crashworthiness claim.

In this regard, the record is devoid of any proposed alternative design of the seatback release device.[2] While Mr. Derian claims that the location of the release device was defective due to the possibility of its inadvertent actuation during a crash, he does not propose an alternative location that would both comply with FMVSS 207 and be safer. In other words, Mr. Derian does not opine "that at the time of [the probe's] design an alternative, safer, and practicable design [of the seatback release device] existed that could have been incorporated instead." *Gaudio*, 976

---

2. Because the court has determined that plaintiff's seatbelt theory is preempted, that theory need not be addressed with regard to Ford's expert motion.

A.2d 524, 532. In sum, plaintiff has produced no evidence, expert or otherwise, to establish the first element of her crashworthiness claim.

In response to Ford's argument on this issue, plaintiff dedicates a single paragraph in her brief, which is as follows:

> Finally, the moving defendant, relying largely on *Colville v. Crown Equipment Corp.*, 809 A.2d 916 (Pa. Super. 2002) asserts that plaintiff cannot establish a *prima facie* case under the crashworthiness doctrine. *Colville*, however, establishes that the jury must be instructed on the crashworthiness doctrine. No case is cited wherein summary judgment was granted on the grounds asserted by movant.

(Pl.'s Br. at 9.) Plaintiff's argument is akin to arguing, in a breach of contract action, that because the court will instruct the jury on the elements of a cause of action for breach of contract, a plaintiff can survive a motion for summary judgment without producing evidence of a defendant's breach of the contract prior to trial. As plaintiff bears the burden of proof regarding the three elements of her crashworthiness claim, Rule 1035.3(a)(2) requires the court to enter summary judgment if, in response to Ford's expert motion, plaintiff fails to produce evidence creating a material issue of fact with regard to the three crashworthiness elements. As plaintiff has failed to produce such required evidence, Ford's expert motion will be granted, in part, and summary judgment will be

entered on plaintiff's crashworthiness claim.[3]

WHEREFORE, the court enters the following:

## ORDER OF COURT

And now, this 21st day of January, 2015, "defendant Ford Motor Company's motion for summary judgment based on federal preemption," filed on April 30, 2014, is hereby granted, in part, and denied, in part. Plaintiff is precluded from asserting the liability of defendant Ford Motor Company based upon the design of the front passenger seatbelt system of the car at issue.

"Defendant Ford Motor Company's motion for summary judgment Based on Lack of competent expert evidence," also filed on April 30, 2014, is hereby granted, in part, and denied, in part. Judgment is hereby entered in favor of defendant Ford Motor Company and against plaintiff on Count IV of plaintiff's amended complaint.

---

3. Because plaintiff has not produced any evidence regarding the first element, the court need not address the second and third elements of a crashworthiness claim to resolve Ford's expert motion.