# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LORRAINE MOSER, Administratrix of
the Estate of Jennifer L. Moser,
deceased,

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY,

*Defendant-Appellee,*

and

ERICA KATHERYN GATES,

*Defendant.*

No. 01-1303

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-97-194-1)

Argued: September 27, 2001

Decided: November 8, 2001

Before WILKINSON, Chief Judge, and LUTTIG and
MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Charles Marion Love, IV, MASTERS & TAYLOR, L.C.,
Charleston, West Virginia, for Appellant. Michael Bonasso,

FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Marvin W. Masters, MASTERS & TAYLOR, L.C., Charleston, West Virginia, for Appellant. William J. Hanna, Robert P. Lorea, FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C., Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Lorraine Moser (Moser), as administratrix of the estate of her deceased daughter, Jennifer L. Moser, brought this action against Ford Motor Company. Jennifer Moser was killed when the 1990 Ford Escort in which she was a passenger ran off the road and rolled over. Moser alleged that the Escort's restraint system was defective and that the warnings regarding the use of that restraint system were inadequate. The district court granted summary judgment to Ford, stating that in light of *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), Moser's defective restraint system and inadequate warning claims are both preempted by Federal Motor Vehicle Safety Standard (FMVSS) 208. Moser appeals, arguing that these claims are not preempted. In addition, she argues that even if they are preempted, she has an alternative, non-preempted theory of recovery. For the following reasons, we affirm.

I.

On October 1, 1995, Jennifer Moser was riding in the passenger seat of Erica Gates's 1990 Ford Escort, which was traveling north on I-79 in West Virginia. At about 2:35 a.m., near the Lost Creek exit, the Escort ran off the road and rolled over. The Escort's automatic two-point shoulder harness was engaged, but Jennifer Moser was not wearing the manual lap belt. Tragically, she sustained fatal head inju-

ries in the crash and died at the scene. Gates, who was wearing both her lap belt and the automatic shoulder harness, survived the accident.

The Escort was manufactured by Ford in August of 1989 and contained a two-point passive restraint system with a knee bolster and modified seat design. The Escort also had a manual lap belt. At that time, under FMVSS 208 automakers were required to outfit vehicles with restraint systems falling under one of several restraint system options. *See* 49 C.F.R. § 571.208 (1989). Under Option One, S4.1.2.1, the vehicle had to meet federal crash protection requirements with a completely passive restraint system that required no action by the vehicle occupants. The FMVSS did not dictate the specific passive system that should be used, but sought to encourage technological innovation by permitting automakers to develop any type of passive system, so long as that system would comply with the crash requirements of FMVSS 208. While automakers were permitted to develop any new systems, the Department of Transportation listed and discussed the fully passive systems that appeared to have promise at the time of the rulemaking. These options consisted of a two-point system with knee bolster, a three-point system, an airbag system, and a passive interior system. *See* 49 Fed. Reg. 28965 (1984).

Manufacturers could also certify vehicles under Option Two, S4.1.2.2, or Option Three, S4.1.2.3. Under Option Two the vehicle had to meet crash requirements with a restraint system that was partly automatic and partly manual. Option Three consisted of manual lap and shoulder belts with a seat belt warning system. Ford certified the Escort's restraint system under Option One, without the manual lap belt. Accordingly, the manual lap belt in the Escort was an additional safety feature permitted, but not required, by the Option One certification.

Moser sued in West Virginia state court, and Ford removed the case to federal court. As her primary theory of recovery, Moser argued that the Escort's two-point passive system was inherently faulty because such a system was inadequate to protect an occupant in the event of a rollover crash. Moser claimed that the Escort's two-point restraint system could be rendered safe and non-defective only with the use of a manual lap belt or a three-point passive system. Moser seeks to characterize her argument as one that this Escort's

particular two-point passive system was defective, not that all two-point passive systems are defective. However, the defects she identifies in this particular two-point passive system, with the exceptions noted below and discussed in part IV *infra*, are universal to all two-point passive systems. Thus, despite Moser's attempt to characterize her primary claim as specific to this particular two-point system, this claim is in effect an attack on two-point passive systems generally. As an alternative theory, Moser also pointed out several defects unique to this particular two-point passive system; she argued that the shoulder anchors were improperly placed and that the seat design and knee bolster were defectively designed. Additionally, Moser argued that Ford's warning to occupants to use the lap belt was inadequate.

During the pretrial phase of the proceedings, Moser notified the district court that the Supreme Court had granted certiorari in *Geier v. American Honda Motor Co.*, *cert. granted*, 527 U.S. 1063 (1999), and indicated to the court that *Geier* "will no doubt . . . decide[ ]" the issues presented "in this matter." Accordingly, the district court delayed its ruling on Ford's motion to dismiss pending the resolution of *Geier*. After the Supreme Court ruled in *Geier*, Ford filed a renewed motion to dismiss. The district court considered the motion in light of the significant discovery that had already occurred and treated the motion as one for summary judgment. The court granted Ford's motion, ruling that in light of *Geier* Moser's primary claims were preempted by the FMVSS. The district court also dismissed Moser's alternative defect theories, reasoning that Moser's own expert had ruled them out. Moser appeals.

## II.

We first address Moser's primary claim, which is essentially that two-point passive restraint systems are inherently defective unless a manual lap belt is used. Because *Geier* did not involve this precise issue, we examine *Geier* to determine whether its preemption holding is applicable in this case.

In *Geier* the plaintiff, Alexis Geier, sued Honda under District of Columbia tort law. Geier was injured when her 1987 Honda Accord crashed, even though she was wearing the manual lap and shoulder belts provided in the vehicle. Geier claimed that her vehicle was

defectively designed because it lacked a driver's side airbag. The Supreme Court held that this claim was impliedly preempted because it "actually conflict[ed] with FMVSS 208." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 874 (2000). The Court explained that FMVSS 208 "deliberately provided the manufacturer with a range of choices among different passive restraint devices." *Id.* at 875. According to the Court, the manufacturer's ability to choose among different passive restraint devices promoted FMVSS 208's safety objectives: allowing a range of choices would encourage technological development, lower costs, facilitate widespread consumer acceptance, and permit the development of data on the relative efficacy of various passive systems. *Id.* at 875, 878-79. Thus, the Court explained that the FMVSS sought not only variety as between, say, Option One (fully passive) and Option Two (part passive, part active) systems, but also sought "a mix of several different passive restraint [Option One] systems." *Id.* at 878. FMVSS 208 "embodies the . . . policy judgment that safety would best be promoted if manufacturers installed *alternative* protection systems in their fleets rather than one particular system in every car." *Id.* at 881 (quoting Brief for United States as *Amicus Curiae* 25). The Supreme Court characterized Geier's tort suit as an attempt to impose a duty on manufacturers to install an airbag, rather than other passive restraint systems, in every vehicle. *Id.* at 881. This, the Court held, "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.*

Moser argues that her claim is that this Escort's particular two-point passive system is defective, not that all two-point passive systems are defective. But regardless of whether Moser claims to be criticizing this particular two-point passive system rather than two-point passive systems generally, if the defects she identifies in this particular system are universal to all two-point passive systems, then her claim amounts to an attack on two-point passive systems generally. In fact, with the exceptions discussed in part IV *infra*, Moser's criticisms of this system are equally applicable to all two-point passive systems. Therefore, Moser's argument that this two-point system is unsafe without the use of an automatic or manual lap belt amounts to an argument that Ford should have chosen another system, specifically, a three-point passive system or an Option Two part-passive, part-active system.

Insofar as Moser claims that any two-point passive restraint system is inherently unsafe and defective, her claim, if successful, would exclude that type of system from the range of available passive systems. Both Geier's and Moser's claims would frustrate the Department of Transportation's goal of promoting a variety and mix of passive devices. As the Supreme Court explained, Geier's claim would totally frustrate that goal by imposing a uniform airbag requirement on all vehicles. In contrast, Moser's claim would only partially frustrate the goal. It eliminates one of the possible types of passive restraint systems, thus reducing the available variety by one, but still permits any other passive system options.

We are therefore presented with the question of whether this more limited interference with the objectives of FMVSS 208 causes FMVSS 208 to preempt Moser's claim. We need not decide whether allowing a single state tort lawsuit to exclude one type of passive system so frustrates the goals of FMVSS 208 as to require preemption, because the potential cumulative effect of such suits could completely frustrate the goals of FMVSS. While Moser's suit seeks only to exclude one type of passive restraint system, the two-point passive system, similar state tort actions could likewise seek to exclude another specific type of passive system, then another, then another. While no one claim would result in a complete frustration of the goal of permitting a mix of passive systems, the net effect of state tort law could be to exclude most or all of the passive systems that were available to manufacturers in 1989. This would frustrate the goals of FMVSS 208 just as completely as Geier's suit to impose a uniform airbag requirement frustrated those goals. Accordingly, we hold that FMVSS 208 preempts Moser's claim that a two-point passive restraint system is inherently defective.

### III.

Moser also appeals the district court's dismissal of her inadequate warning claim. Moser argued in the district court that the sign on the Escort's visor warning the passenger to buckle the manual lap belt was inadequate. The district court held that this claim was preempted under *Geier*, just as the underlying choice of restraint systems claim was preempted. We affirm, albeit on slightly different reasoning.

As part of this claim, Moser alleges that Ford had a duty to warn occupants of the Escort that the car was not safe unless the occupant fastened the manual lap belt. If Ford had no such duty, the claim fails. Needless to say, Ford could only have such a duty if it were *true* that the car was unsafe unless the lap belt was used. Moser's inadequate warning theory is, at bottom, based on a claim that the Escort's two-point passive system was unsafe without the use of the lap belt. As we have explained above, that claim is preempted by the FMVSS under *Geier*. Because we are precluded in this case from finding any duty on Ford's part to provide the manual lap belt, Ford can have no corresponding duty to warn occupants to use the lap belt. Accordingly, Moser's inadequate warning claim fails as a matter of law.

IV.

Finally, Moser argues that she should be permitted to pursue an alternative, non-preempted theory of liability. She argues that apart from the inherent defectiveness of any two-point passive system, this particular two-point passive system was faulty in design. For example, in her brief Moser argues that the location of the anchor points and the design of the seat and the knee bolster were all defective. We agree that according to *Geier* claims based on such alternative theories of defective design, as opposed to defective choice of restraint system, are not preempted by FMVSS 208. While such claims are not preempted, the question remains whether the district court erred in granting summary judgment in this case.

To survive summary judgment, Moser must present evidence to create a "genuine issue as to material fact" as to whether any of these alleged defects were present and caused or contributed to Jennifer Moser's death. Fed. R. Civ. P. 56(c). While the party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moser repeatedly mentions alleged defects in the placement of the shoulder belt and the design of the seat and knee bolster in her briefs,

but she cites only one place in the record containing evidence in support of these claims. William Muzzy III, one of Moser's expert witnesses, testified in a deposition that "if the shoulder belt had been back, or if it had been designed to be, say, on the seat, then it would have certainly contributed to holding her upper body in place." After combing the record ourselves, we have found only one other statement by Muzzy (or anyone else) that could support a design defect theory: earlier in the same deposition, Muzzy stated, "[t]he shoulder belt portion of it, by its very nature, is forward of the shoulder and does not capture the shoulder in quite a few of the accident sequences."

Both prior to and following these two statements, Muzzy repeatedly and explicitly testified that, *in this accident*, any such defects — the placement of the shoulder harness, the design of the seat or the knee bolster — did not cause or contribute to Jennifer Moser's injuries or death. When Ford's counsel asked Muzzy whether "the deficiency which you contend is in the shoulder belt, is really irrelevant to your opinions as to the cause of her injuries and death in this case," Muzzy responded "Yes." At another point, Muzzy clarified that "the seatback in this case did not fail." Muzzy also testified that he had not investigated the seat bottom, so he could offer no opinion regarding that part of the vehicle. Later, Ford's counsel repeated that "the only defect with regard to the system which you believe caused or contributed to her death in this case was the lack of a lap restraint in this accident for Jennifer Moser," and Muzzy said, "That's right." Muzzy gave similar statements at numerous other points in his deposition, and Moser's counsel did not ask Muzzy follow-up questions to challenge or question his clear testimony that none of these defects caused or contributed to Jennifer Moser's injuries or death in this accident.

Moser simply failed to present evidence sufficient to create a genuine issue of material fact as to whether any such design defects, if present in this car, caused or contributed to Jennifer Moser's injuries or death. In fact, Moser's own expert affirmatively confirmed that these defects did not cause or contribute to Jennifer Moser's injuries or death. Accordingly, we affirm the district court's dismissal of Moser's alternative design defect claim.

## V.

In light of *Geier*, Moser's choice of restraint systems theory is preempted by the FMVSS. Similarly, Moser's inadequate warning claim fails as a matter of law because it necessarily depends on the existence of a legal duty that we are precluded from imposing. Finally, Moser failed to present sufficient evidence to raise a genuine issue of material fact on her alternative design defect theories. Accordingly, the judgment of the district court is

*AFFIRMED*.