NO. 4-04-0601

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NANCY OSMAN, Independent Administratrix of the Estate of SHANNON A. LAUGHLIN, Deceased,

                       Plaintiff-Appellant,

                       v.

FORD MOTOR COMPANY, a Delaware Corporation, 

Registered to do Business in the State of Illinois,

                       Defendant-Appellee.

)

)

)

)

))))

Appeal from

Circuit Court of

Livingston County

No. 98L15

Honorable

Harold J. Frobish, 

Judge Presiding.

JUSTICE TURNER delivered the opinion of the court:

Plaintiff, Nancy Osman, independent administratrix of the estate of Shannon A. Laughlin, deceased, appeals from the June 15, 2004, order of the circuit court of Livingston County granting summary judgment to defendant, Ford Motor Company (Ford), on plaintiff's fourth-amended complaint on the grounds the claims set forth in the complaint are preempted by federal law.  We affirm.

I. BACKGROUND

On September 9, 1995, Shannon and her mother, plaintiff, purchased a 1988 Ford Escort (Escort) that was manufactured in August 1987.  On April 6, 1996, Shannon was killed in a one-vehicle accident when the Escort left the highway and rolled over.  Shannon was not wearing the manual lap belt and was ejected from the driver's seat.  She was decapitated, and her right arm was severed.

Congress enacted the National Traffic and Motor Vehicle Safety Act of 1966 (Safety Act) in response to increasing numbers of deaths and injuries from unsafely designed vehicles.  15 U.S.C. ྷྷ1381 through 1431 (1988) (recodified as 49 U.S.C. ྷྷ30101 through 30169 (1994)).  The Safety Act gave the Department of Transportation (DOT) the power to enact safety standards regulating many facets of automotive design.  

Federal Motor Vehicle Safety Standard (FMVSS) 208 is promulgated under the Safety Act.  FMVSS 208 (49 C.F.R. ྷ571.208 (1987)) gives car manufacturers options on what kinds of restraint systems they can use, and the version of FMVSS 208 in effect in August 1987 (when the Escort was manufactured) set forth the following options.  Option One is a frontal/angular automatic protection system, 
i.e.
, automatic seat belts with or without air bags.  49 C.F.R. ྷ571.208, S4.1.2.1 (1987); see also 
Kitts v. General Motors Corp.
, 875 F.2d 787, 788 n.2 (10th Cir. 1989).  Option Two is a head-on automatic protection system, 
i.e.
, automatic shoulder belts or air bags, plus manual lap belts for lateral crashes and rollovers, with a seat-belt warning system.  49 C.F.R. ྷ571.208, S4.1.2.2 (1987); 
Kitts
, 875 F.2d at 788 n.2.  Option Three is a lap and shoulder-belt protection system with a seat-belt warning system.  49 C.F.R. ྷ571.208, S4.1.2.3 (1987); 
Kitts
, 875 F.2d at 788 n.2.

Howard Slater, a design-analysis engineer for Ford, submitted an affidavit in which he stated Ford certified the Escort involved in this case under Option One of FMVSS 208.  Slater stated the restraint system employed by Ford in this Escort was equipped with a passive two-point shoulder-belt assembly, a knee bolster, and modified seat design, with a manual lap belt.  The manual lap belt, discussed in more detail below, was voluntarily provided.

Ford voluntarily placed a warning on the Escort's visor, which stated the following:

"IMPORTANT FOR YOUR SAFETY:

Following these instructions will greatly improve your chances 

of avoiding severe injury in case of an accident:

*** Always wear your lap belt when the car is moving.

*** Be sure the shoulder belt release lever is down.

*** If the symbol ([]) stays lit for more than [eight] seconds, consult your Owner's Guide before driving the vehicle."

The owner's guide provides:

"The Passive[-]Restraint System operates electrically.  The system restrains a driver and the front[-]seat passenger in the vehicle through the use of an automatic shoulder belt, the manual belt[,] and knee bolsters.  THE SAFETY LAP BELT IS TO BE MANUALLY CONNECTED BY THE DRIVER/PASSENGER AND SHOULD ALWAYS BE WORN WITH THE SHOULDER BELT.  BE SURE THE LAP BELT IS ON YOUR HIPS AS LOW AS POSSIBLE."

As stated above, Shannon was not using the lap belt at the time of the accident. 

On April 2, 1998, plaintiff filed suit against Ford.  Her fourth-amended complaint alleged three theories of recovery for wrongful death.  Count I alleged strict liability, count II alleged negligence, and count III alleged Ford violated Illinois's Consumer Fraud and Deceptive Business Practices Act (Business Practices Act) (815 ILCS 505/1 through 12 (West 1996) (formerly Ill. Rev. Stat. 1987, ch. 121 1/2, pars. 261 through 272)).

Specifically, count I alleged Shannon's Escort was defective because (1) it failed to contain adequate instructions for the proper use of the driver's seat-belt assembly, (2) it failed to contain adequate and proper warning that the shoulder belt was not to be used without the concurrent use of the lap belt, (3) it failed to contain adequate and proper warning of the dangers of severe personal injury associated with the use of the passive two-point shoulder-belt assembly without latching the manual lap belt, and (4) it failed to contain adequate published instructions for the use of the driver's occupant-restraint system.

Count II stated Ford was negligent because Ford (1) failed to provide adequate and proper warning that the passive two-point shoulder-belt assembly was not to be used without the concurrent use of a latched belt, (2) failed to provide adequate and proper warning of the dangers of severe personal injury associated with the use of the passive two-point shoulder-belt assembly without latching the manual lap belt, and (3) failed to provide adequate instructions for the proper use of the driver's occupant-restraint system.

Count III alleged Ford violated the Business Practices Act when it "concealed, suppressed, and omitted material facts concerning the risk of injury or death which was inherent by use of the passive two-point shoulder belt without the manual lap belt being attached and also intentionally misrepresented the safety qualities of said automobile."  The claim is based on an internal Ford memo, which states, in pertinent part, as follows:

"Attached is a proposal of a decal that is to be installed on the 1987 Escort equipped with passive belts.

The intent of the decal is to remind the occupant to fasten their lap belts.  Initially the proposal was to put big warning signs, which I objected to.  It appears all parties are in agreement with this, with the exception of the Human Factors Group.

I feel it is important that people recognize that our passive belt system is a safe system.  I also want to convey that the system can be made safer by using the additional lap belt.  However, I do not want to construe to people that our passive belt system is non-safe without the lap belt."

In December 2003, Ford filed a motion for summary judgment (735 ILCS 5/2-1005 (West 1996)), alleging the claims in plaintiff's fourth-amended complaint are preempted by FMVSS 208.  On June 3, 2004, the trial court held a hearing on Ford's motion.  On June 15, 2004, the court granted Ford's motion for summary judgment, holding plaintiff's claims were preempted.  The court found 
Moser v. Ford Motor Co.
, 28 Fed. Appx. 168 (4th Cir. 2001), 
Carrasquilla v. Mazda Motor Corp.
, 166 F. Supp. 2d 169 (M.D.P.A. 2001), and 
James v. Mazda Motor Corp.
, 222 F.3d 1323 (11th Cir. 2000), to be persuasive.  This appeal followed.

II. ANALYSIS

A. Standard of Review

An appellate court reviews the granting of summary judgment 
de
 
novo
.  
Steinberg v. Universal Underwriters Insurance Co.
, 272 Ill. App. 3d 79, 81, 650 N.E.2d 14, 16 (1995).  When the pleadings, affidavits, depositions, admissions, and exhibits on file viewed in the light most favorable to the nonmoving party reveal there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996).  

B. Strict Liability and Negligence

Pursuant to the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), Congress has the authority to preempt state law.  See 
Malone v. American Cyanamid Co.
, 271 Ill. App. 3d 843, 846, 649 N.E.2d 493, 495-96 (1995).  We look to congressional intent to determine whether a federal statute preempts state law.  
Scholtens v. Schneider
, 173 Ill. 2d 375, 379, 671 N.E.2d 657, 660 (1996).  "An act of Congress or regulatory law promulgated thereunder may supersede the statutory, regulatory[,] or common law of any state where such '[is] the clear and manifest purpose of Congress.'"  
Orman v. Charles Schwab & Co.
, 179 Ill. 2d 282, 285, 688 N.E.2d 620, 621 (1997), quoting 
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992), quoting 
Rice v. Santa Fe Elevator Corp.
, 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152 (1947).

Congress may make its intent to preempt clear either expressly or implicitly.  See 
Freightliner Corp. v. Myrick
, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 392, 115 S. Ct. 1483, 1487 (1995).  Express preemption occurs where Congress explicitly preempts state law.  
Mejia v. White GMC Trucks, Inc.
, 336 Ill. App. 3d 702, 705, 784 N.E.2d 345, 348 (2002).  Implied preemption takes two forms.  "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, [citation], or when state law is in actual conflict with federal law."  
Freightliner Corp.
, 514 U.S. at 287, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487.  The Supreme Court stated as follows:

"We have found implied conflict pre[]emption where it is 'impossible for a private party to comply with both state and federal requirements' [citation], or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'  [Citation.]"  
Freightliner Corp.
, 514 U.S. at 287, 131 L. Ed. 2d at 392, 115 S. Ct. at 1487.

The Supreme Court discussed preemption in a case in which the driver was injured after hitting a tree.  In 
Geier v. American Honda Motor Co.
, 529 U.S. 861, 865, 146 L. Ed. 2d 914, 921, 120 S. Ct. 1913, 1916-17 (2000), the petitioners claimed the Honda Accord (Accord), which was in compliance with FMVSS 208, was designed defectively and negligently because it lacked a driver's-side air bag.  Honda claimed the petitioners' suit was preempted by federal law.  The Court looked at the express-preemption provision of the Safety Act, which states the following:

"When a motor vehicle safety standard is in effect under this chapter [(49 U.S.C. §§30101 through 30169 (1994))], a [s]tate or a political subdivision of a [s]tate may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter [(49 U.S.C. §§30101 through 30169 (1994))]."  49 U.S.C. §30103(b)(1) (2000) (formerly 15 U.S.C. §1392(d) (1988)).

The Court held this provision "does not of its own force pre[]empt common-law tort actions."  
Geier
, 529 U.S. at 870, 146 L. Ed. 2d at 924, 120 S. Ct. at 1919. 

Next, the Court determined what effect the savings clause had on the petitioner's claim.  The savings clause states that "[c]ompliance with a motor vehicle safety standard *** does not exempt a person from liability at common law."  49 U.S.C. ྷ30103(e) (2000) (formerly 15 U.S.C. ྷ1397(k) (1988)).  The Court concluded "the savings clause foresees--it does not foreclose--the possibility that a federal safety standard will pre[]empt a state common-law tort action with which it conflicts."  
Geier
, 529 U.S. at 870, 146 L. Ed. 2d at 925, 120 S. Ct. at 1919.  

Ultimately, the Court found the petitioner's claims depended on her claim that manufacturers had a duty to install an air bag when they manufactured the 1987 Accord.  
Geier
, 529 U.S. at 881, 146 L. Ed. 2d at 931-32, 120 S. Ct. at 1925. 
 Finding for the petitioners "would have required all manufacturers to have installed air bags in respect to the entire District-of-Columbia-related portion of their 1987 new car fleet."  
Geier
, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925.  However, at that time, FMVSS 208 only required 10% of a manufacturer's nationwide fleet be equipped with any passive-restraint device at all.  The Court held the petitioner's claim Honda had a duty to install air bags "would have presented an obstacle to the variety and mix of devices that [FMVSS 208] sought."  
Geier
, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925.  Accordingly, the petitioner's claims were preempted.  
Geier
, 529 U.S. at 881, 146 L. Ed. 2d at 932, 120 S. Ct. at 1925; see also 
Davis v. Nissan Motor Corp. in U.S.A.
, No. 99-C-1186 (June 2, 2000) (2000 U.S. Dist. LEXIS 7851) (no-air-bag claim preempted); see also 
Hilst v. General Motors Corp.
, 305 Ill. App. 3d 792, 797, 713 N.E.2d 99, 102-03 (1999) (
Third District held a "no[-]air[-]bag" claim is preempted by FMVSS 208).   

As stated, the trial court granted Ford's motion for summary judgment, finding 
Moser
, 
Carrasquilla
, and 
James
 involved "the same passive[-]restraint system as the instant case, and directly hold that inadequate[-]warning claims were pre[]empted by FMVSS 208." 

We note plaintiff objects to Ford's citation to 
Moser
 and to this court's "reliance" on it because the Fourth Circuit Court of Appeals (Fourth Circuit) chose not to publish 
Moser
.  However, the Fourth Circuit allows the parties to a case to cite its unpublished dispositions under certain circumstances such as those present in this case, 
i.e.
, when the parties believe an unpublished decision of the Fourth Circuit "has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well."  4th Cir. Local R. 36(c).  Moreover, while 
Moser
 is not binding on this court, it does not follow that we have to ignore the logic and reasoning of the Fourth Circuit's analysis.  The fact one court has used certain reasoning in an unpublished opinion does not bar courts in this state from using the same reasoning in their decisions.  While our supreme court restricts parties from citing unpublished orders of Illinois appellate courts (166 Ill. 2d R. 23(e)), that does not bar the parties from using the reasoning and logic that an Illinois appellate court used in its unpublished decision; rather, it bars parties from citing that unpublished decision as authority.  Further, we cannot prevent courts sitting in other jurisdictions from citing our unpublished orders in their dispositions.

The facts in 
Moser
 are very similar to the facts in this case.  We have 
analyzed the Fourth Circuit's reasoning used to reach its conclusion in 
Moser
, and we find the reasoning logical and persuasive.  Thus, we choose to follow that reasoning.  

In 
Moser
, the plaintiff administratix (Moser) of her daughter's estate filed suit against Ford after her daughter was killed in an automobile accident in which the Escort she was a passenger in rolled over.  
Moser
, 28 Fed. Appx. at 169.  Moser alleged the Escort had a defective restraint system and the warnings regarding the use of that system were inadequate.
  
Moser
, 28 Fed. Appx. at 169.  The decedent had the automatic two-point shoulder harness engaged but was not wearing the manual lap belt.  Ford certified the Escort involved in  
Moser
 under Option One (described above) of FMVSS 208, without the manual lap belt.  In 
Moser
, as it did in this case, Ford provided the manual lap
 belt voluntarily.  "Accordingly, the manual lap belt in the Escort was an additional safety feature permitted, but not required, by the Option[-]One certification."  
Moser
, 28 Fed. Appx. at 169.

"Moser claimed that the Escort's two-point restraint system could be rendered safe and non-defective only with the use of a manual lap belt or a three-point passive system."  
Moser
, 28 Fed. Appx. at 170.  Moser sought to characterize her argument as one that not all two-point passive-restraint systems were defective, just this particular two-point passive-restraint system.  However, the court stated the following:

"[R]egardless of whether Moser claims to be criticizing this particular two-point passive system rather than two-point passive systems generally, if the defects she identifies in this particular system are universal to all two-point passive systems, then her claim amounts to an attack on two-point passive systems generally."  
Moser
, 28 Fed. Appx. at 171. 

Thus, Moser's argument that this two-point system was not safe unless used with an automatic or manual lap belt amounted to an argument Ford should have chosen another system.  The court characterized Moser's claim as similar to that made in 
Geier
.  Specifically, both Geier's and Moser's claims would frustrate the DOT's goal of promoting a variety and mix of passive devices.  
Moser
, 28 Fed. Appx. at 171.  The court then held FMVSS 208 preempts Moser's claim that a two-point passive-restraint system is inherently defective.  
Moser
, 28 Fed. Appx. at 171.

The court then turned to Moser's inadequate-warning claim.  Moser claimed the sign on the Escort's visor warning the passenger to buckle the lap belt was inadequate.  
Moser
, 28 Fed. Appx. at 172.  As part of this claim, Moser argued Ford had a duty to warn occupants of the Escort that the car was not safe unless the occupant fastened the manual lap belt.  The court said Moser's inadequate-warning claim is based on a claim that the Escort's two-point passive system is unsafe if not used with a lap belt.  As Ford has no duty to provide a manual lap belt, 
i.e.
, since the Escort was certified under Option One, and because such a finding is preempted by FMVSS 208, "Ford can have no corresponding duty to warn occupants to use the lap belt."  
Moser
, 28 Fed. Appx. at 172.

In 
Carrasquilla
, the plaintiffs brought claims against Mazda Motor Corporation (Mazda), alleging the vehicle involved in a car crash was defective.  Specifically, the plaintiffs alleged the vehicle was defective because it lacked a lap belt integrated with the automatic shoulder belts, lacked knee bolsters, lacked an adequate seat back, lacked adequate warnings regarding the hazard associated with not wearing the manual lap belt, and failed to adequately warn the plaintiffs of the risk of harm associated with the purported lack of an adequate seat back, seat-track mechanism, and knee bolster.  
Carrasquilla
, 166 F. Supp. 2d at 174.  Mazda equipped the car involved in the accident with an "occupant[-]protection system that consisted of passive two-point torso (shoulder) belts, manual lap belts[,] and knee bolsters."  
Carrasquilla
, 166 F. Supp. 2d at 173.  Mazda filed a motion for summary judgment, alleging the plaintiffs' design-defect claims were preempted to the extent they were premised on a challenge to a design choice available to Mazda under FMVSS 208.  
Carrasquilla
, 166 F. Supp. 2d at 174.  

The plaintiffs contested Mazda's motion for summary judgment on the following three grounds:

"(1) that 
Geier
 does not operate to preempt plaintiffs' claims because plaintiffs do not challenge [Mazda's] design choice but, rather, claim that the automatic[-]belt system chosen as the passive

[-]restraint option was defectively implemented; (2) that even if [Mazda's] use of a shoulder-only automatic[-]belt system is an acceptable option under FMVSS 208, plaintiffs' claims are not preempted if other design characteristics of the Protégé (
i.e.
, inadequate seat tracks, seat backs, and knee bolsters) made it necessary to include an integrated lap belt in order to make the system safe; and (3) that even if plaintiffs' design[-]defect claims are preempted, plaintiffs may still pursue a claim that the vehicle was defective by virtue of inadequate warnings regarding the dangers of shoulder-only automatic belts."  
Carrasquilla
, 166 F. Supp. 2d at 174.  

The District Court of the Middle District of Pennsylvania
 viewed "plaintiffs' claim that the restraint system was designed defectively because it lacked an integrated automatic lap belt as a direct challenge to one of the restraint options available to [Mazda] under FMVSS 208."  
Carrasquilla
, 166 F. Supp. 2d at 176 n.7
.  The court found this claim to, "in theory," be no different from the claim in 
Geier
.  
Carrasquilla
, 166 F. Supp. 2d at 176.  Thus, the claim that the Protégé was defectively designed because it lacked an integrated automatic lap belt was preempted.

However, the court did state that "[t]o the extent that  plaintiffs' defective[-]design action is based on the absence of an adequate seat back, seat[-]track mechanism, and/or knee bolster, it is not preempted because" there is no actual conflict with the Safety Act or FMVSS 208.  
Carrasquilla
, 166 F. Supp. 2d at 179. 

The court held the "plaintiffs' claim that inadequate warnings regarding the shoulder-only automatic belt employed by [Mazda] pursuant to federal regulations constitute a design defect is preempted."  
Carrasquilla
, 166 F. Supp. 2d at 180.  However, the failure-to-warn claims pertaining to the allegedly defective seat back, seat-track mechanism, and knee bolster were not preempted.

 
             In 
James
, the plaintiffs' decedent was killed when the car she was driving was forced off the road by an unidentified driver.  The decedent was driving a 1994 Mazda Protégé (Protégé).  The Protégé employed a passive two-point shoulder belt and a manual lap belt.  The decedent was not wearing her lap belt at the time of the accident.  
James
, 222 F.3d at 1324.  The plaintiffs alleged the manual lap belt had been defectively designed and Mazda negligently failed to warn the Protégé was dangerous unless the manual lap belt was worn.
  In 
James
, the district court concluded the two-point shoulder belt and manual lap belt (a system similar to the one used in 
Irving v. Mazda Motor Corp.
, 136 F.3d 764 (11th Cir. 1998)) complied with FMVSS 208, and as a result, granted Mazda summary judgment because the case was "'virtually indistinguishable'" from 
Irving
.  
James
, 222 F.3d at 1325.
  The issue in 
James
 on appeal was whether the Supreme Court's decision in 
Geier
 cast doubt on the viability of the Eleventh Circuit's decision in 
Irving
.  
James
, 222 F.3d at 1323.  The following facts were pertinent in 
Irving
:

"Plaintiff Juliette Irving filed suit against [d]efendant Mazda Motor Corporation on behalf of her daughter, Bonita Irving. Bonita was killed in a single-car accident while driving a 1990 Mazda MX-6. After her daughter's death, [p]laintiff filed this suit claiming that the seat belts in the MX-6 were defectively designed and that Mazda failed to warn consumers adequately of the risks of not utilizing all portions--particularly the manual lap[-]belt portion--of the safety[-] belt system.

The safety[-]belt system used in the Mazda MX-6 included a two-point passive shoulder restraint (automatic shoulder belt) with a manual lap belt.  This kind of restraint system was one of three options provided to car manufacturers by FMVSS 208. Plaintiff contends the design represented by this option was defective."  
Irving
, 136 F.3d at 766.

The 
Irving
 court noted the plaintiff's argument in the district court was that the option selected by Mazda, and provided for in the standards, was defective.  
Irving
, 136 F.3d at 768-69.  However, on appeal, the plaintiff seemed "to argue for the first time *** that different, nondefective designs could have been selected by [d]efendants under the same regulatory option: automatic shoulder belt with manual lap belt [(Option Two of FMVSS 208)]."  
Irving
, 136 F.3d at 769.  The court did not allow the plaintiff to change its argument.

The court found the plaintiff's argument made in the district court is not expressly preempted by FMVSS 208.  
Irving
, 136 F.3d at 768.  The claim against Mazda for its exercise of an option provided it by FMVSS 208 conflicts with federal law and is impliedly preempted.  
Irving
, 136 F.3d at 769.  The court then looked at the failure-to-warn claim.  The court found the plaintiff tied the claims of defective design and failure to warn together.  
Irving
, 136 F.3d at 770.  The court held the following: "Because [p]laintiff's defective-design claim is preempted by FMVSS 208, there was no defect about which to warn.  Plaintiff's failure-to-warn claim--which is, in this case, dependent on the preempted defective-design claim--was properly dismissed."  
Irving
, 136 F.3d at 770.

The 
James
 court held 
Irving
 is not in conflict with 
Geier
 and is still good law.  
James
, 222 F.3d at 1327.  Further, the 
James
 court found the case to be "on all fours" with 
Irving
 and, thus, upheld the district court's grant of summary judgment in favor of Mazda.  
James
, 222 F.3d at 1325.

Plaintiff maintains the Sixth Circuit's decision in 
King v. Ford Motor Co.
, 209 F.3d 886 (6th Cir. 2000), supports her argument that her warning claims are not preempted.  In 
King
, 209 F.3d at 890, Patti King was killed when the 1992 Ford Escort in which she was a front-seat passenger was involved in an accident. 
 The Escort involved in 
King
 employed a passive-restraint system in its front seats that consisted of a two-point motorized shoulder belt that automatically locked in place when the occupant closed her door, a knee bolster, and a manual lap belt (this car was certified under Option Two under FMVSS 208).  Patti was not wearing her manual lap belt at the time of the accident.  
King
, 209 F.3d at 890.  

The administrator of Patti's estate brought suit against Ford with claims of negligence, strict liability, and breach of implied warranties based on the allegation Patti's injuries, and ultimately, her death, were the result of defects in the Escort's restraint system.  
King
, 209 F.3d at 890.  The district court granted Ford summary judgment to the extent the plaintiff's claims alleged the Escort was defective because it failed to contain an air bag because such a claim is preempted.  
King
, 209 F.3d at 890.  The case went to the jury on two theories: (1) the automatic seat-belt restraint system was defective and unreasonably dangerous to the consumer and (2) Ford failed to warn consumers of the potential dangers associated with using the restraint system.  
King
, 209 F.3d at 890-91.  The jury found Ford liable on both claims.  Ford appealed, claiming plaintiff's claims were preempted by federal law.

Ford characterized the plaintiff's suit as one claiming the restraint systems chosen by Ford are inherently defective and argued the plaintiff's suit would limit the flexibility the Safety Act and FMVSS 208 give Ford in choosing a restraint system.  
King
, 209 F.3d at 892.  The court stated the plaintiff's position was not that the design choice made by Ford was inherently defective; rather, the claim was that the "'specific design was defective due to failure to use load limiters and/or change the location of the knee bolster and/or change the location of the belt anchor.'"  
King
, 209 F.3d at 892.  The court held such a claim is not preempted.  
King
, 209 F.3d at 892; see also 
Geier
, 529 U.S. 885, 146 L. Ed. 2d at 935, 120 S. Ct. at 1928 (it is possible "special design-related circumstances concerning a particular kind of car" might require a specific type of restraint system, and such a claim could escape preemption).  The 
King
 court then affirmed the jury's verdict on the failure-to-warn claim.

The claims set forth in 
King
 are not the same as the claims plaintiff brought in this lawsuit.  King's suit was premised on the claim of a specific design defect, 
i.e.
, the restraint system had a structural-design flaw.  In this case, plaintiff argues the design defect is that the warning was inadequate because it is unsafe to use the restraint system without the manual lap belt.  As stated, plaintiff specifically claims Ford should have warned (1) that the shoulder-belt assembly should not be used without concurrent use of the lap belt and (2) of the dangers of using the shoulder-belt assembly without latching the manual lap belt.  Plaintiff also alleged Ford should have (1) provided more adequate instructions for the proper use of the driver's occupant-restraint system and (2) provided more adequate instructions for the proper use of the driver's seat assembly.
 

We conclude the results in 
Geier
, 
Carrasquilla
, 
James
, and 
Irving
, and the reasoning behind the decision in 
Moser
, dictate that plaintiff's claims based on strict liability and negligence are preempted.  Plaintiff is correct that, under strict-liability principles, a failure-to-warn-of-a-product's-dangerous-propensity claim is a separate and distinct product-defect claim from one predicated on improper design.  See 
Miller v. Rinker Boat Co.
, 352 Ill. App. 3d 648, 660, 815 N.E.2d 1219, 1230 (2004) (a product may be unreasonably dangerous because of a manufacturing defect or a failure to warn consumers of the dangers involved in using a product).  However, this case presents us with an unusual situation.  Although plaintiff maintains her claims do not attack the restraint choice chosen by Ford, her complaint clearly ties her claims to an assumption the restraint system is inherently dangerous unless used with a lap belt.  In counts I and II of her complaint, plaintiff states the warning was inadequate because it did not say the restraint system was "not to be used without concurrent use of the lap belt" or that it was dangerous to use "without latching the manual lap belt."  However, as stated above, the option under which Ford certified the Escort's restraint system did not require a lap belt.   

Moreover, like the Escort in 
Moser
, the Escort in this case was certified under Option One of FMVSS 208, but a manual lap belt was voluntarily provided as an additional safety feature.  Since Option One of FMVSS 208 allows a manufacturer to use a restraint system without a lap belt, such as the one Ford employed in the Escort in this case, Ford did not have a duty to provide a lap belt.  Thus, a holding that Ford had a duty to warn consumers that the Escort's two-point restraint system was unsafe if used without a lap belt is preempted by FMVSS 208.  Finding for plaintiff on her strict-liability and negligence claims would effectively foreclose use of the option that Ford certified the restraint system under because that option does not require the use of a manual lap belt.  Such a claim is impliedly preempted because it would frustrate the flexibility Congress and DOT intended to give automobile manufacturers in this area.  See 
Pokorny v. Ford Motor Co.
, 902 F.2d 1116, 1123 (3d Cir. 1990) (allowing a claim that a vehicle was defective because it lacked air bags or automatic seatbelts frustrates federal regulatory framework and undermines flexibility given by Congress and DOT). 

C. Consumer Fraud and Deceptive Business Practices Act

Plaintiff alleges Ford possessed information, data, and test results that disclosed the dangers of using the restraint system employed in the Escort without using the manual lap belt but concealed and misrepresented its knowledge.  Plaintiff claims the "concealment, suppression, omission of material facts[,] and misrepresentations by Ford constituted a violation of the *** Consumer Fraud and Deceptive Business Practices Act of the State of Illinois."  We disagree.

Plaintiff's complaint alleges violations of sections 2 and 10a of the Business Practices Act (815 ILCS 505/2, 10a (West 1996) (formerly Ill. Rev. Stat. 1987, ch. 121 1/2, pars. 262, 270a)).  Section 2 of the Business Practices Acts states in relevant part as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression[,] or omission of any material fact, with intent that others rely upon the concealment, suppression[,] or omission of such material fact *** are hereby declared unlawful whether any person has in fact been misled, deceived[,] or damaged thereby."  815 ILCS 505/2 (West 1996) (formerly Ill. Rev. Stat. 1987, ch. 121 1/2, par. 262).

To state a claim under section 2 of the Business Practices Act, plaintiffs must allege (1) a deceptive act or practice by the defendants, (2) the defendants' intent that plaintiffs rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiffs proximately caused as a result.  
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002).

In 
Oliveira
, our supreme court compared an action brought under section 10a of the Business Practices Act with an action brought under section 2.  The court said as follows:

"Unlike an action brought by the Attorney General under section 2, which does not require that 'any person has in fact been misled, deceived[,] or damaged' (815 ILCS 505/2 (West 1996)), a private cause of action brought under section 10a(a) requires proof of 'actual damage' (815 ILCS 505/10a(a) (West 1996)).  Further, a private cause of action brought under section 10a(a) requires proof that the damage occurred 'as a result of' the deceptive act or practice (815 ILCS 505/10a(a) (West 1996)).  As noted previously, this language imposes a proximate causation requirement. [Citations.]"  
Oliveira
, 201 Ill. 2d at 149, 776 N.E.2d at 160.

Both Ford and plaintiff cite cases they claim support their arguments.  However, none of the cases cited by the parties are exactly on point because they do not concern the Safety Act or FMVSS 208.

Initially, we note plaintiff has not stated what misrepresentations Ford made about the safety of the Escort.  Rather, the memorandum plaintiff relies on for her Business Practices Act claim, at most, could be used to support her allegation of concealment or suppression of facts relating to the danger of not using the lap belt.  However, as discussed below, that claim also fails.  

We conclude plaintiff's argument that Ford violated the Business Practices Act by not warning of "material facts concerning the risk of injury or death which was 
inherent
 
by
 
the
 
use
 
of
 
the
 
passive
 
two-point
 
shoulder
 
belt
 
without
 
the
 
manual
 
lap
 
belt
 
being
 
latched
" and by misrepresenting the safety of the Escort is preempted by FMVSS 208.  (Emphasis added.)  The emphasized language shows plaintiff's claim under the Business Practices Act, like her strict-liability and negligence claims, is based on the premise that Ford knew the restraint system chosen by Ford is inherently dangerous unless used with a lap belt and hid that fact from the public.  To succeed on these claims, the court would have to find the restraint system certified under Option One is not safe.  See 
Lynnbrook Farms v. Smithkline Beecham Corp.
, 79 F.3d 620 (7th Cir. 1996).  However, by implementing FMVSS 208, the federal government deemed the restraint systems under Option One as safe. 

Further, the Business Practices Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."  815 ILCS 505/10b(1) (West 1996) (formerly Ill. Rev. Stat. 1987, ch. 121 1/2, par. 270b(1)).  As stated, plaintiff's Business Practices Act claim essentially argues Ford withheld information it had about the dangers of not using the lap belt.  An assumption of this argument is that the restraint system, without the lap belt, is dangerous.  However, the federal government provided this option to automobile manufacturers.  Thus, Ford was "authorized" by FMVSS 208 to equip the Escort with a restraint system that does not utilize a manual lap belt.  The Business Practices Act cannot apply to a claim premised on the argument that the restraint system Ford implemented (
i.e.
, without the lap belt) in the Escort and certified under Option One of FMVSS 208 is unsafe because a claim the system is unsafe is preempted
.  Accordingly, we conclude Ford cannot be held liable for allegedly withholding information about the dangers of using the two-point shoulder belt without latching the lap belt or misrepresenting the safety of the Escort's restraint system.

Finally, we conclude plaintiff's complaint fails to allege with specificity how Ford was deceptive.  In 
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 675 N.E.2d 584 (1996), our supreme court dismissed the plaintiffs' consumer-fraud claim that Suzuki misrepresented the safety of the Suzuki Samurai.  Specifically, the plaintiffs alleged "the owner's manual provided '"guidelines" for safe "on-pavement driving"' and that 'these guidelines were provided because [Suzuki] knew that plaintiffs and members of the Class would "often use [the] vehicle on paved roads."'"  
Connick
, 174 Ill. 2d at 502, 675 N.E.2d at 594.  The court held the plaintiffs' complaint failed because it did not allege how the Samurai was unsafe where a driver followed the manual's guidelines.  
Connick
, 174 Ill. 2d at 502, 675 N.E.2d at 594.  "Without such specificity and particularity, the complaint fails to state a violation of consumer fraud."  
Connick
, 174 Ill. 2d at 502, 675 N.E.2d at 594.

While the claims in our case are not exactly the same as those in 
Connick
, we find the supreme court's holding instructive.  Here, the visor warning tells the driver to always wear the lap belt because it will greatly improve one's chances of avoiding severe injury in the case of an accident.  The owner's manual states "THE SAFETY LAP BELT IS TO BE MANUALLY CONNECTED BY THE DRIVER/PASSENGER AND SHOULD ALWAYS BE WORN WITH THE SHOULDER BELT.  BE SURE THE LAP BELT IS ON YOUR HIPS AS LOW AS POSSIBLE."  Plaintiff's complaint alleges Ford concealed, suppressed, and omitted material facts concerning the risk of injury or death inherent by use of the passive two-point shoulder belt without latching the manual lap belt.  However, the visor warning and owner's manual tell the driver to 
always
 wear the manual lap belt.  Like in 
Connick
, the complaint fails to allege how the Escort is unsafe where a driver followed the visor warnings and owner's manual's guidelines.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.